UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON PILARSKI,<br><br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Case # 1:18-cv-748-DB<br><br>MEMORANDUM DECISION<br>AND ORDER |

## INTRODUCTION

Plaintiff Jason Pilarski ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 21).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 15, 20. Plaintiff also filed a reply. *See* ECF No. 22. For the reasons set forth below, Plaintiff's motion (ECF No. 15) is **DENIED**, and the Commissioner's motion (ECF No. 20) is **GRANTED**

## BACKGROUND

Plaintiff protectively filed his DIB and SSI applications on May 7, 2014, alleging a disability beginning January 30, 2014 (the disability onset date), based on: (1) Cyclic Vomiting Syndrome; (2) Asthma; (3) Depression; (4) Anxiety; and (5) Hydrocephalus. Transcript (Tr.) 263. Plaintiff's applications were initially denied on August 6, 2014, after which he requested an

administrative hearing. Tr. 15. A hearing was held in Buffalo, New York, on September 13, 2016. *Id*. Administrative Law Judge Bryce Baird (the "ALJ") presided over the hearing. *Id*. Plaintiff appeared and testified at the hearing and was represented by Kenneth R. Hiller, an attorney. Stephanie A. Lorey, an impartial vocational expert ("VE") also appeared and testified at the hearing. *Id*. The ALJ issued an unfavorable decision on April 12, 2017, finding Plaintiff not disabled. Tr. 15-27. On May 9, 2018, the Appeals Council denied Plaintiff's request for review. Tr. 1-7. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his April 12, 2017 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015;

2. The claimant has not engaged in substantial gainful activity since January 30, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant has the following severe impairments: cyclical vomiting syndrome, migraine headaches, cervicalgia, anxiety and depression (20 CFR 404.1520(c) and 416.920(C));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).[1] The claimant can occasionally lift and carry 10 pounds and frequently lift and carry five pounds. He can sit, stand and walk for approximately six hours each in an eight-hour workday. The claimant can occasionally climb ramps and stairs, stoop and kneel and he can never climb ladders, ropes or scaffolds. The claimant can frequently balance, and he can never crouch or crawl. The claimant can engage in frequent fine and gross manipulation with the right hand and he can frequently handle and finger with the right dominant hand. The claimant cannot be exposed to excessive heat, cold, moisture or humidity or hazards such as unprotected heights or moving machinery. The claimant cannot have concentrated exposure to irritants such as odors, dusts, gasses, fumes or poor ventilation and he cannot have exposure to noise greater than the "loud" level, as "loud" is defined by the Selected Characteristics of Occupations, an Appendix to the Dictionary of Occupational Titles. He cannot have direct exposure to bright and flashing lights. The claimant is limited to performing simple and routine tasks that can be learned after a short demonstration or within 30 days. His work cannot require production rate or pace work and work must not involve team work such as on a production line. The claimant is limited to performing work that requires doing the same tasks every day with little variation in location, hours, or tasks;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

7. The claimant was born on June 12, 1989 and was 24 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a));

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 30, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 15-27.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on May 7, 2014, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 27. The ALJ also determined that, for the application for supplemental security income, filed on May 7, 2014, Plaintiff is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## **ANALYSIS**

Plaintiff asserts two points of error: (1) The ALJ improperly used his lay opinion and "selective reading" to evaluate the opinions and evidence of record, resulting in an RFC finding unsupported by substantial evidence; and (2) the ALJ's RFC failed to account for limitations for off-task time and missed workdays. *See* ECF No. 15-1 at 2. The Commissioner argues in response that substantial evidence shows that Plaintiff was able to perform light work with the additional limitations the ALJ identified. *See* ECF No. 20-1 at 5.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. In this case, substantial evidence shows that Plaintiff was able to perform light work with the additional limitations the ALJ identified.

Plaintiff was seen by consultative examiner Hongbiao Liu, M.D. ("Dr. Liu") on July 31, 2014. Tr. 855-58. Dr. Liu found no physical functional limitations and diagnosed migraines, anxiety and depression, history of asthma, and gastric reflux disease ("GERD"). Tr. 857. Dr. Liu opined that Plaintiff had no limitation for routine activities but should avoid dust and other pulmonary irritants to limit asthma attacks. Tr. 858. Plaintiff complains that the ALJ's assignment of "some weight" to Dr. Liu's opinion was improper because Dr. Liu failed to consider the limiting effects of Plaintiff's frequent cyclical vomiting syndrome ("CVS") and migraines, and because the opinion was inconsistent with the record as a whole. *See* ECF No. 15-1 at 18-19.

Plaintiff testified that he had daily headaches and frequent vomiting episodes, caused by factors like, stress, anxiety, and heat. Tr. 84. Plaintiff visited the emergency room ("ER") several times because of vomiting episodes. Tr. 640-41, 652, 865, 972, 1176-1181, 1182-1187. Examination results throughout the record documented essentially normal physical functioning, with no motor or sensory deficits, normal gait, and normal range of motion findings. Tr. 572, 641, 658, 979. Psychiatric findings and mental status examinations were also generally normal. Tr. 572, 641. Plaintiff also testified that he was going to the hospital less frequently in 2016. Tr. 84. The record evidence showed that Plaintiff's migraines were controlled with medication, and he

reported his vomiting was under control at various points. Tr. 916, 941, 953. Plaintiff's last ER record for vomiting occurred in December 2014 after he reported eating a "mighty taco." Tr. 972. A review of the records submitted shows only two ER visits after December 2014. One was for a motor vehicle accident in September 2015 (Tr. 898-907), and the other in June 2016 for urethritis (Tr. 1228-45).

According to Plaintiff, the ALJ failed to account for Plaintiff's "well-supported limitations of off-task time and missed work days," as well as exertional activities and triggers that might trigger vomiting episodes or migraines. *See* ECF No. 15-1 at 2. However, the ALJ explained that he gave Dr. Liu's opinion only some weight because it was based on a one-time assessment and because the overall evidence of record showed Plaintiff was "significantly more limited than Dr. Liu opined." Tr. 24. As the ALJ explained, Dr. Liu's opinion was accommodated in the RFC formulated by the ALJ,, but because the ALJ found Plaintiff was significantly more limited than Dr. Liu opined, the ALJ included additional limitations in the RFC, including lifting and carrying no more than 10 pounds, postural restrictions, and environmental restrictions. Tr. 19-20, 24. In light of the ultimate RFC finding, which imposed greater limitations than Dr. Liu's "no limitation for routine activities," the ALJ did not rely on Dr. Liu's opinion for the ultimate RFC finding. *See* Tr. 19-20. Rather, the ALJ relied on other substantial evidence in the record to formulate Plaintiff's RFC. Accordingly, Plaintiff's argument that Dr. Liu's opinion "cannot provide substantial evidence for the ALJ's opinion" is meritless, and thus, remand is not warranted on this ground.

Plaintiff also complains that the ALJ did not give controlling weight to opinions from two of his treating physicians, Kent Tisher, M.D. ("Dr. Tisher"), and Tanya Kausahl, M.D. ("Dr. KausahlL"). *See* ECF No. 15-1 at 20-25. The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and

7

laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013).

In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g.*, *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013). Furthermore, as long as the ALJ is careful to explain his decision, he is entitled to reject portions of a medical opinion that conflict with other evidence in the record. *See Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) ("an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions"). However, opinions may be given controlling weight only if they are well supported and not inconsistent with other substantial

evidence in the record. 20 C.F.R. § 404.1527(c)(2). Here, as the ALJ explained, these opinions did not meet this standard (Tr. 22-24).

In May 2014, Dr. Tisher completed a check-the-box form indicating there was no evidence that Plaintiff had any physical or mental functional limitations, but he also wrote that Plaintiff's "cyclic vomiting and frequent migraines mean he is often ill and unable to work." Tr. 1144. In July 2014, just two months later, Dr. Tisher completed a functional assessment questionnaire stating that Plaintiff had significant physical and mental limitations; would be absent from work more than four days per month; and would not be able to sustain full-time employment. Tr. 845-49. The ALJ acknowledged Plaintiff had a treating relationship with Plaintiff, but he also noted that Dr. Tisher provided two contradictory opinions, authored only months apart. Tr. 22-23. Supportability and consistency are valid factors in deciding the weight accorded to any medical opinion. *See Michels v. Astrue*, 297 F.App'x 74, 76 (2d Cir. Oct. 30, 2008).

In this case, the ALJ explained why he discounted Dr. Tisher's opinion that Plaintiff would miss multiple days of work or was otherwise unable to work. As the ALJ noted, Plaintiff experienced only intermittent increases in symptomatology, such as with the birth of his child, and it was often noted that his symptoms were well-controlled, or their frequency had decreased. Tr. 23; *see also* Tr. 923, 925, 928, 931, 934, 936, 939, 942, 948. As noted above, opinions that are inconsistent with the record are entitled to less weight. *See* 20 C.F.R. § 404.1527(c)(4). The record reflects no active problems other than headaches, which are controlled with medication. Tr. 941. As the ALJ noted, the record also reflects that Plaintiff's vomiting was under control, and his vomiting episodes had decreased. Tr. 916, 941, 953. Because Dr. Tisher's opinions contradicted each other and were inconsistent with the record, the ALJ reasonably gave them limited weight. *See* 20 C.F.R. § 404.1527(c)(2).

Furthermore, an opinion asserting that a claimant is unable to work is not a "medical opinion," and thus cannot receive controlling weight, and need not be weighed using the factors identified in § 404.1527. Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Dr. Kaushal similarly opined that Plaintiff was essentially precluded from work due to his headaches and vomiting. Tr. 1250-52. She also identified some moderate limitations in lifting, carrying, pushing, pulling, bending, and using his hands. Tr. 1151-52. The ALJ gave these opinions limited weight as well, noting that the RFC accommodated some of Dr. Kaushal's opined limitations by limiting Plaintiff to less than the full range of light work with additional manipulative, environmental, mental, and postural limitations. Tr. 23. However, the ALJ discounted Dr. Kaushal's assertions that Plaintiff was incapable of low-stress jobs and would be absent more than four days per month, noting that Plaintiff discontinued treatment at DENT Neurological Institute ("DENT"),[2] where he was receiving care for his migraines and psychiatric care, and because his vomiting was under control at times, and he did not have recent emergency room treatment. Tr. 24. These were good reasons, supported by the record, for not giving this opinion controlling weight overall and discounting the portion of the opinion stating that Plaintiff was incapable of low-stress work.

---

[2] The record reflects that Plaintiff was discharged from DENT due to missed appointments. Tr. 941, 953, 1171.

10

Furthermore, Dr. Kaushal completed a check-the-box residual functional capacity report as to Plaintiff's headaches. Tr. 1250-51. She indicated that her limiting opinion was supported by positive test results and objective signs, including MRI, CT scan, and weight loss (among others). Tr. 1251. However, Plaintiff's radiological studies were essentially negative (Tr. 569, 765, 877-79), and his weight was always steady. Plaintiff's weight and body mass index ("BMI") are stable throughout his treatment period. Tr. 913, 917, 921, 923, 928, 1251. A similar observation was noted in the ALJ decision in Plaintiff's prior case. *See* Tr. 119-123.

According to Plaintiff's medical records, he claims to have had CVS since the age of 9. Tr. 568. Although treatment records reflect multiple ER visits for CVS in 2013 and through mid-2014, most of the visits predate the period of disability. At one point, Plaintiff claimed to have had 70 ER visits in one year, which is unsupported by the evidence of record. CT scans of his brain and abdomen were essentially negative. Tr. 569, 1224. Generally, his lab results were unremarkable except for understandable low potassium levels from vomiting. Tr. 1218-1220. Plaintiff saw Theodore Wells, M.D. ("Dr. Wells") for his CVS. Dr. Wells discussed with Plaintiff the association between marijuana use and CVS. Tr. 572. Plaintiff denied smoking pot. *Id*. However, clinical lab reports, as well as medical records reflect as much as daily use. Tr. 574, 595, 629, 668, 1218-20. The record reflects that Plaintiff was advised to stop smoking marijuana (Tr. 696), but Plaintiff refused to believe that marijuana had anything to do with his CVS (Tr. 670). On two occasions, two different ALJs have considered this same issue and reached the same conclusion—Plaintiff is not disabled.

Plaintiff argues that, in light of the two treating doctor opinions, the RFC cannot stand. *See* ECF No. 15-1 at 20-25. However, the ALJ gave his reasons for formulating the RFC as he did. Tr. 22-24. Most notable from the records is the complete absence of any hospital visits for CVS after

11

December 2014. Despite Plaintiff's arguments to the contrary (*see* ECF No. 15-1 at 27-39), the ALJ properly considered Plaintiff's subjective statements about the limiting effect of his impairments and determined those statements were inconsistent with the other evidence in the record. Tr. 19-26. While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted). That is not the case here. Substantial evidence supported the ALJ's RFC despite Plaintiff's assertions to the contrary.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 15) is **DENIED,** and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 20) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE